OPINION
Plaintiff-appellant, JoAnne E. Lewis ("JoAnne"), appeals a decision of the Clermont County Court of Common Pleas, Domestic Relations Division, valuing and dividing certain assets in a divorce proceeding against her husband, defendant-appellee, William E. Lewis ("William"). William cross-appeals, also claiming that the trial court erred in dividing and valuing certain assets.
JoAnne and William were married on January 16, 1988. This was the second marriage for both parties. Though the parties had children by previous marriages, they did not have any children together. Soon after they were married, Joanne moved into William's house in Goshen, Ohio. In 1989, William sold the Goshen house and moved with JoAnne to a house in Milford, Ohio. A year later, William's employer, ATT, transferred him to Georgia. They sold their Milford house and purchased a house in Georgia. In 1995, William was transferred back to Ohio. William and JoAnne then sold their Georgia house and purchased the marital residence in Pleasant Plain, Ohio.
In October 1998, William accepted an early retirement package from ATT. He had been an employee there since 1969. ATT paid him his retirement benefits as a lump sum. William directly transferred, or "rolled over" those funds into an account at Fidelity Investments ("Fidelity account"). The "rolled over" funds included William's pension fund, his 401(k) account, and a deferred distribution bonus. The funds in the Fidelity account have remained there since the "rollover," and, at the time of the divorce hearing, the account contained $659,454.24. William did not retire from employment after leaving ATT, but continued to work in the telecommunications industry.
JoAnne filed a complaint for divorce on March 16, 1999 with the trial court. However, JoAnne continued to live at the marital residence until March 1, 2000 when she left to stay with a friend in Kentucky. Soon thereafter, she paid a deposit toward the purchase of a condominium. A final divorce hearing was held before a magistrate on March 23, 2000 and continued in progress on May 16, 2000. By decision filed July 7, 2000, the magistrate divided the parties' assets. The magistrate found that all the equity in their residence was marital and divided the equity equally between the parties. The magistrate divided the ATT pension plan, including the deferred distribution bonus, according to the formula set forth in Hoyt v. Hoyt (1990), 53 Ohio St.3d 177, N 182. Because JoAnne was married to William 36.7 percent of the time he was employed at ATT, the marital portion of the pension plan was 36.7 percent, of which JoAnne was awarded half. Based on this calculation and an undisputed calculation of the marital portion of the 401(k) plan, the magistrate awarded JoAnne half of the marital portion of the Fidelity account, or, 21.3 percent of the total account.
Both JoAnne and William objected to the magistrate's determinations. However, the trial court overruled the objections and adopted the terms of the property division. JoAnne now appeals the trial court's determination, raising two assignments of error. William cross-appeals, raising five cross-assignments of error.
JoAnne's Assignment of Error No. 1:
 THE TRIAL COURT ERRED IN TREATING THE FIDELITY INVESTMENT ACCOUNT HELD IN THE NAME OF DEFENDANT AS A PENSION FUND.
JoAnne argues that the trial court should have treated the entire lump sum payment that William received from ATT and "rolled over" into his Fidelity account not as a pension fund, but as a marital asset to be divided equally. Even if the lump sum payment is treated like a pension, she argues that the trial court improperly valued the marital portion of the ATT pension.
We review the trial court's classification of property as marital or separate under a manifest weight of the evidence standard. Johnson v.Johnson (Sept. 27, 1999), Warren App. No. CA99-01-001, unreported, at 7. Under such review, the findings of the trial court relating to its classification of property as marital or separate are reviewed to determine whether they are supported by competent, credible evidence.Barkley v. Barkley (1997), 119 Ohio App.3d 155, 159. As to property division, the trial court has broad discretion to determine what is equitable. Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 130-31. Absent an abuse of discretion, a reviewing court must not reverse the decision of the trial court regarding property division. Martin v. Martin
(1985), 18 Ohio St.3d 292, 294-95.
The general rule is that pension or retirement benefits earned during the course of a marriage are marital assets. Hoyt,53 Ohio St.3d at 178; R.C. 3105.171(A)(3)(a)(i) and (ii). William testified and provided documentation that the funds he "rolled over" into his Fidelity account were pension and retirement benefits accumulated during his employment at ATT. He presented the testimony of Vicki Rankin, a CPA, who traced his retirement benefits into the Fidelity account. The sources of these "rolled over" funds were: (1) William's ATT pension, (2) his ATT 401(k) account, and (3) a deferred distribution bonus he received by delaying the distribution of his pension by a few months. All of these funds were pension or retirement funds accumulated during William's years of employment at ATT. Thus, the trial court's finding that the funds in the Fidelity account were pension and retirement benefits, the marital portion of which was subject to division, was supported by competent, credible evidence.
Joanne also argues that the value of the marital portion of William's ATT pension should have been calculated by subtracting the present value of the pension at the date of marriage, multiplied by a reasonable growth rate, from the current value of the pension. JoAnne offers no legal analysis and cites no case law to support this valuation method.
Under Ohio's legal scheme, the value of a pension as a marital asset is determined by calculating the percentage of time the spouse whose pension is at issue was married during his or her employment. See Hoyt at 183;Cherry v. Figart (1993), 86 Ohio App.3d 123, N 127. In this case, William had been working at ATT for three hundred fifty-three months. He and JoAnne had been married for one hundred twenty-nine and one-half months. Therefore, 36.7 percent (129.5 ÷ 353) of the total value of the pension was marital property. Based on this calculation, the trial court found that the marital portion of the pension was $157,906.52 and awarded Joanne half, or $78,953.26. The trial court's use of the valuation method prescribed by the Ohio Supreme Court in Hoyt rather than the method urged by JoAnne does not constitute an abuse of discretion.
As previously stated, William "rolled over" his pension and his 401(k) into the Fidelity account. Using the value for the marital portion of William's pension as calculated above and the undisputed value of the 401(k) plan, the trial court determined that Joanne was entitled to 21.3 percent of the funds in the Fidelity account. The trial court did not abuse its discretion in reaching this conclusion, but merely followed theHoyt case in determining the value of the pension's marital portion in the Fidelity account. JoAnne's first assignment of error is overruled.
JoAnne's Assignment of Error No. 2:
 THE TRIAL COURT ERRED IN ATTEMPTING TO DIVIDE EQUALLY BETWEEN THE PARTIES [sic].
In her second assignment of error, JoAnne argues that the trial court erred in valuing a 1997 Toyota Camry automobile. She also argues that the trial court should have credited William with $36,342 from his ATT Savings Plan, not $16,320.22. Finally, she argues that the trial court erred by making no distinction between assets that are tax-free pension arrangements and assets that are not.
A trial court has discretion to equitably divide marital property.Cherry v. Cherry (1981), 66 Ohio St.2d 348, 355; Krisher v. Krisher
(1992), 82 Ohio App.3d 159, 163. A trial court's decision dividing marital property will be upheld absent an abuse of discretion.Middendorf v. Middendorf (1998), 82 Ohio St.3d 397, N 401; Martin v.Martin (1985), 18 Ohio St.3d 292, 294-295. "Abuse of discretion" is more than an error of law or judgment; it implies that the court acted in an unreasonable, arbitrary, or unconscionable fashion. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. A trial court's decision which is supported by competent, credible evidence does not constitute an abuse of discretion. Middendorf at 401.
William testified that the value of the 1997 Toyota Camry was $10,935. JoAnne testified that there was approximately $12,000 owed on the Toyota. The trial court awarded the Toyota to JoAnne with no equity, assigning it a value of zero. Because the lien against the Toyota exceeded its value, the trial court did not abuse its discretion in valuing the Toyota.
JoAnne next argues that the trial court mistakenly credited William with $16,320.22 instead of $36,342 from his ATT Savings Plan. JoAnne argues that William did not show a necessity to use this money for household expenses as he claimed. The trial court found that William received $36,342 in "after-tax" dollars from his ATT Savings Plan and deposited that money in a Bank One savings account. William testified and documented that he used $20,021.78 of this money to pay marital debt. He testified that he used this money to pay Bank One Visa, ATT Universal, and an overdraft account. He also testified that he used the remaining $16,320.22 for necessary living expenses for which JoAnne refused to contribute. The trial court accepted William's testimony regarding the use of $20,021.78 to pay off marital debt. However, because of William and JoAnne's substantial monthly incomes, the trial court found that it was not necessary for William to have used the remaining $16,320.22 for living expenses. Thus, the trial court credited William with $16,320.22 in the property division. The trial court's decision is supported by testimony and documentation and we find no abuse of discretion.
Finally, JoAnne argues that the trial court made no distinction between assets that are tax-free pension arrangements and assets that are not. JoAnne failed to raise this issue before the trial court in her objections to the magistrate's decision. Therefore, she cannot allege this error now on appeal. See Civ.R. 53(E)(3)(b); Schneider v.Schneider (Jan. 22, 2001), Butler App. No. CA2000-05-089, unreported, at 8-9. JoAnne's second assignment of error is overruled.
William's Cross-assignment of Error No. 1:
 THE TRIAL COURT ERRED IN FAILING TO AWARD DEFENDANT-APPELLEE, AS HIS SEPARATE PROPERTY, THE PREMARITAL EQUITY OF $48,475 IN THE MARITAL HOUSE.
In his first cross-assignment of error, William argues that the trial court erred by failing to award him premarital equity in the marital residence as his separate property. He contends that he adequately traced $48,475 of now commingled house equity to his separate property. As proof of his premarital equity in the marital residence, William provided documentation showing the sale proceeds from the first house where he and JoAnne resided, the Goshen house. He testified that he used these proceeds and the sale proceeds from the other houses sold during the marriage as down payments for the three subsequently purchased houses. In order to calculate his premarital equity, William multiplied the sale proceeds amount from the Goshen house by an agreed upon real estate growth rate of 3.5 percent. The trial court found that William had not sustained his burden of proof in tracing the proceeds from the first home through the purchase of the subsequent three homes. William also argues that because JoAnne admitted he had $31,266 in premarital equity, he had at least that much equity that was traceable to his separate property.
We have reviewed the trial court's classification of property as marital or separate under a manifest weight of the evidence standard.Johnson, Warren App. No. CA99-01-001, unreported, at 7.
Separate property includes any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage. R.C. 3105.171(A)(6)(a)(ii). The commingling of separate and marital property does not destroy the character of the separate property unless its identity as separate is not traceable. R.C. 3105.171(A)(6)(b). The party seeking to have a particular asset classified as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property.Peck v. Peck (1994), 96 Ohio App.3d 731, 734.
In her Plaintiff's Exhibit C that was submitted to the trial court, JoAnne prepared a list of what she believed to be the principal assets of the marriage. In item fifteen of that document under "assets," she listed "husband's premarital equity" in the amount of $31,266. She testified that she arrived at that figure by multiplying what she believed to be William's down payment on their house in Milford by an agreed upon growth rate of 3.5 percent. We find that the trial court's determination that William did not adequately trace his premarital equity in the marital residence to his separate property is against the manifest weight of the evidence. JoAnne's Exhibit C, together with the testimony and exhibits received in William's case, show that William did have equity in the marital residence that was traceable to his separate property. JoAnne's Exhibit C shows that William has $31,266 in premarital equity while William claims he has $48,475 in premarital equity. The trial court shall determine the exact amount on remand. William's first cross-assignment of error is sustained.
William's Cross-assignment of Error No. 2:
 THE TRIAL COURT ERRED WHEN IT DID NOT FIND THE PLAINTIFF'S DEPOSIT OF $6,900 ON A CONDO TO BE MARITAL PROPERTY SUBJECT TO DIVISION.
JoAnne testified that she put a $6,900 deposit down on a condominium around the time she left the marital residence on March 1, 2000. William argues that the $6,900 condo deposit should be a marital asset for equal division. The trial court found that "no evidence was presented as to the nature of the funds used to make the down payment." The trial court continued: "[t]hus, it is unclear whether the down payment was made with marital funds, a loan or non-marital funds."
In a divorce proceeding, the court must determine what constitutes marital property and what constitutes separate property. R.C. 3105.171(B). Marital property is all real or personal property or interest in real or personal property currently owned by either spouse. R.C.3105.171(A)(3)(a)(i) and (ii).
Upon review of the record, we find that there is some evidence regarding the source of the condo deposit. JoAnne stated in her deposition that she used a VISA card acquired through her credit union to put down $2,000 on the condo. However, it is unclear whether this was a marital credit card or a personal credit card for which only JoAnne was responsible. It is also unclear whether JoAnne put down the deposit before or after March 1, 2000, the date the trial court determined to be the end of the marriage for property division purposes. JoAnne also testified at her deposition that she was going to take out a $5,000 loan to cover the rest of the deposit. It appears from the record that JoAnne took out this $5,000 loan from her Convergys 401(k) account, an account the trial court treated as a marital asset. Defendant's Exhibits 19 and 19A show that a $5,000 loan was taken from this account between February 24, 2000 and March 7, 2000. It further appears that the magistrate did not take this loan into account when valuing the 401(k) in the final property division.
We find that the trial court erred by failing to classify the $6,900 condo deposit. On remand, the trial court shall determine whether the deposit constitutes JoAnne's separate property or whether it is marital property subject to division. William's second cross-assignment of error is sustained.
William's Cross-assignment of Error No. 3:
 THE TRIAL COURT ERRED IN FAILING TO FIND THE PLAINTIFF'S JEWELRY, VALUED AT $21,700 TO BE MARITAL PROPERTY SUBJECT TO DIVISION.
The trial court ordered that "each party shall retain his/her own jewelry." William argues that the trial court erred by not considering JoAnne's rings as marital assets to be divided. JoAnne did testify that she purchased over $20,000 in rings. However, she also testified that, in order to make these purchases, she traded in a number of rings that were premarital gifts from William including her engagement ring and wedding band. She further testified that any rings she purchased were charged on her personal credit cards after the divorce was filed and that the debt was her own personal debt. Accordingly, we do not find that the trial court abused its discretion by not dividing the jewelry as marital property. William's third cross-assignment of error is overruled.
William's Cross-assignment of Error No. 4:
 THE MAGISTRATE ERRED IN THE FINDINGS REGARDING "OTHER CASH ASSETS/DISTRIBUTIONS" AT PAGE 7 OF HER DECISION FINDING INSUFFICIENT EVIDENCE TO DEMONSTRATE NECESSITY, AND FINDING THE DEFENDNAT [sic] RECEIVED A BONUS MATERIAL TO PROPERTY DIVISION.
William argues that the trial court erred by including $16,320 from his ATT Savings account, twenty-eight savings bonds, and a $6,300 work bonus as marital assets subject to division. At the divorce hearing, William presented evidence that JoAnne refused to contribute any money toward living expenses after January 1999, and that he was forced to use the above-mentioned funds to pay the parties' living expenses. William presented an itemized list of the marital expenses he paid during this time. The trial court's decision indicates that this evidence was considered. However, because William was making $56,000 per year at the time and JoAnne was making $40,000 per year at the time, the magistrate found that it was unnecessary for William to have used those funds for living expenses. We do not find this to be an abuse of discretion. William's fourth cross-assignment of error is overruled.
William's Cross-assignment of Error No. 5:
 THE COURT ERRED IN NOT AWARDING DEFENDANT ATTORNEY'S FEES.
William argues that he should have been awarded attorney fees under R.C. 2323.51 because JoAnne argued for a valuation of his pension that was frivolous and clearly contrary to settled case law.
The decision to award attorney fees rests with the sound discretion of the trial court. Balog v. Balog (June 6, 1997), Warren App. Nos. CA96-08-077, CA96-08-081, CA96-09-086, unreported at 5, citing Rand v.Rand (1985), 18 Ohio St.3d 356, 359. Accordingly, a trial court decision regarding an attorney fee award will not be disturbed unless it is unreasonable, arbitrary, or unconscionable. Balog at 5, citing Dunbar v.Dunbar (1994), 68 Ohio St.3d 369, 371.
We do not find that the trial court's failure to award William attorney fees was unreasonable, arbitrary, or unconscionable. The Hoyt case emphasizes that when considering how to distribute pension benefits, a trial court must look at the circumstances of the case, the status of the parties, the nature, terms, and conditions of the pension plan, and the reasonableness of the result. Hoyt, 53 Ohio St.3d at 179. JoAnne merely argued that her valuation of the pension would result in a more equitable distribution of the pension given the circumstances of the case. Though the trial court ultimately disagreed with JoAnne, we do not find that such an argument should result in an attorney fee award. Thus, the trial court did not abuse its discretion by failing to award attorney fees to William. William's fifth cross-assignment of error is overruled.
Based upon the foregoing analysis, the judgment of the trial court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
YOUNG, P.J., and POWELL, J., concur.