OPINION
{¶ 1} Plaintiff-appellant, Burdette L. Green, appeals from a division of property order ("DOPO") of the Franklin County Court of Common Pleas, Division of Domestic Relations. For the following reasons, we vacate the order of the trial court.
 {¶ 2} Burdette Green and Lennis Green were married from September 11, 1965, to December 31, 1993. On June 27, 1994, the trial court issued a decree of divorce terminating the marriage and ordering, among other things, an equitable division of marital property.
 {¶ 3} Thereafter, in Green v. Green (Mar. 30, 1995), Franklin App. No. 94APF07-1088 ("Green I"), Burdette Green challenged the trial court's treatment of his pension benefits as a marital asset. In Green I, this court affirmed the judgment of the trial court and found no abuse of discretion by the trial court concerning its calculation of Lennis Green's interest in Burdette Green's contributions to the State Teacher's Retirement System ("STRS").
 {¶ 4} After Green I, through Sub.H.B. No. 535, 148 Ohio Laws, Part III, 5830, the General Assembly enacted R.C. 3105.80
et seq., effective January 1, 2002. R.C. 3105.80 et seq. "established a procedure by which a court could order the administrator of a public retirement program to distribute benefits divided by a decree of divorce or dissolution directly to a non-participant ex-spouse. Such a distribution would be made pursuant to a division of property order ('DOPO')." Green v.Green, Franklin App. No. 04AP-61, 2005-Ohio-851, at ¶ 4. ("Green II.")
 {¶ 5} In September 2002, after R.C. 3105.80 et seq. became effective, Lennis Green moved the trial court to enforce the provisions of the decree of divorce. In her motion, Lennis Green requested, among other things, the establishment of a DOPO.
 {¶ 6} On December 16, 2003, the trial court issued an entry by which it ordered the parties to execute a DOPO, submit the DOPO to the STRS plan administrator for approval, and then submit the DOPO to the trial court for approval. From this judgment, Burdette Green appealed. See Green II. Finding that the trial court's order was not a final appealable order, the Green II
court dismissed the appeal. Id. at ¶ 11.
 {¶ 7} In the instant case, Burdette Green appeals from the trial court's DOPO that was filed April 19, 2005, and the trial court's earlier entry of December 16, 2003. Burdette Green assigns a single error for our consideration:
The trial court's entry of December 16, 2003 and Division of Property Order (DOPO) of April 19, 2005 are not the enforcement of the prior decree and since it changes the substance of the Court's prior decree, they should be set aside.
 {¶ 8} As a threshold issue, we consider whether subject-matter jurisdiction properly lies. An appellate court may sua sponte raise the issue of subject matter jurisdiction. Stateex rel. White v. Cuyahoga Metro. Hous. Auth. (1997),79 Ohio St.3d 543, 544; Mogavero v. Lombardo (Sept. 25, 2001), Franklin App. No. 01AP-98, citing State ex rel. White, supra. In Ohio, appellate courts have jurisdiction over final orders from courts within their appellate districts. Section 3(B)(2), Article IV, Ohio Constitution; Mogavero, supra; In re Estate of Riley,
Scioto App. No. 05CA3013, 2006-Ohio-956, at ¶ 9 (Harsha, P.J., concurring in judgment only). However, if an order from a lower court within an appellate district is not final, then an Ohio appellate court does not have jurisdiction to review the matter,General Acc. Ins. Co. v. Ins. Co. of North America (1989),44 Ohio St.3d 17, 20, and, as a consequence, the matter must be dismissed. Renner's Welding and Fabrication, Inc. v. ChryslerMotor Corp. (1996), 117 Ohio App.3d 61, 64. See, also,Mogavero, supra.
 {¶ 9} "[B]ecause the division of marital property, including pension benefits, is clearly an ancillary issue in a divorce proceeding, the judgment of the trial court is final and appealable so long as it affects a `substantial right.'" GreenII, at ¶ 8, citing Scott v. Scott (Feb. 8, 2000), Allen App. No. 1-99-79. See, generally, R.C. 2505.02(A)(1) (defining "substantial right" as "a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect");Bell v. Mt. Sinai Med. Ctr. (1993), 67 Ohio St.3d 60, 63, modified on other grounds by Moskovitz v. Mt. Sinai Med. Ctr.
(1994), 69 Ohio St.3d 638 (observing that "[a]n order which affects a substantial right has been perceived to be one which, if not immediately appealable, would foreclose appropriate relief in the future").
 {¶ 10} "To show that an order affects a substantial right, it must be clear that in the absence of immediate review, an appellant will be denied effective future relief." In re Estateof Riley, at ¶ 10, citing Konold v. R.W. Sturge, Ltd. (1996),108 Ohio App.3d 309, 311; Rhynehardt v. Sears Logistics Servs.
(1995), 103 Ohio App.3d 327, 330; Kelm v. Kelm (1994),93 Ohio App.3d 686, 691, appeal not allowed, 70 Ohio St.3d 1427. (Emphasis sic.) "It is not sufficient that the order merely restricts or limits that right. Rather, virtually no opportunity must exist in the future to provide relief from the allegedly prejudicial order." In re Estate of Riley, at ¶ 10, citingState v. Chalendar (1994), 99 Ohio App.3d 4, 6-7.
 {¶ 11} In the present case, if the allegedly prejudicial order at issue were not immediately appealable, then virtually no opportunity would exist in the future to provide Burdette Green with relief from this order. Because appropriate relief in the future would be foreclosed if the present order were not immediately appealable, we therefore conclude that the trial court's DOPO does affect Burdette Green's substantial right, and this court does possess jurisdiction to review the judgment. Cf.Green II, at ¶ 10 (stating that "a judgment apportioning pension benefits between ex-spouses is not a final appealable order until such time as the DOPO is entered by the court").
 {¶ 12} "[R]etirement benefits accumulated during a marriage are subject to property division in a divorce proceeding."Robins v. Robins, Franklin App. No. 04AP-1152, 2005-Ohio-4969, at ¶ 11, citing R.C. 3105.171(I); Erb v. Erb (1996),75 Ohio St.3d 18, 20, reconsideration denied, 75 Ohio St.3d 1452. However, "a division of marital property is not subject to modification through the continuing jurisdiction of the court."Robins, at ¶ 11, citing Wolfe v. Wolfe (1976),46 Ohio St.2d 399, limited by McClain v. McClain (1984), 15 Ohio St.3d 289;Bean v. Bean (1983), 14 Ohio App.3d 358, 361-362. Therefore, "a trial court lacks continuing jurisdiction to modify a division of pension or retirement benefits." Robins, at ¶ 11. "Put another way, `a court has control over the division of property at the time of the divorce decree, but not thereafter.'" Robins, at ¶ 11, quoting Thomas v. Thomas (Apr. 26, 2001), Franklin App. No. 00AP-541. A trial court, however, "always retains the power toenforce the provisions of a divorce decree." Robins, at ¶ 13, citing R.C. 3105.89; Cherry v. Figart (1993),86 Ohio App.3d 123, 126. (Emphasis sic.)
 {¶ 13} In Robins, this court explained:
* * * [I]n a case where a pension or retirement benefit is vested but unmatured at the time of issuance of the final divorce decree, a court may reserve continuing jurisdiction over the distribution of this asset. Hoyt v. Hoyt (1990),53 Ohio St.3d 177, 182, 559 N.E.2d 1292. But failure to reserve jurisdiction deprives the trial court of the ability to modify any award of pension benefits in the decree of divorce or dissolution.Schrader v. Schrader (1995), 108 Ohio App.3d 25, 28,669 N.E.2d 878. In such an instance, the court is without subject matter jurisdiction to modify the award of pension benefits and thus has no power to act in this regard.
Id. at ¶ 12. But, see, Schroeder v. Schroeder (1988),52 Ohio App.3d 117 (finding that where parties did not disclose the full extent of marital property, the court may modify the divorce decree to provide for a fair and complete disposition of the newly disclosed property).
 {¶ 14} In paragraph five of the decree of divorce, the trial court ordered:
The plaintiff's STRS account which accrued between September 11, 1965 and December 31, 1993 shall be deemed a marital asset and valued as follows:
(a) Upon plaintiff's retirement, his contributions during the marriage shall constitute a numerator and his total contributions at the date of retirement shall constitute a denominator in forming a fraction; one-half of such fraction shall determine the final fraction of plaintiff's retirement in installment payments to which defendant shall be entitled.
(b) should plaintiff not retire but withdraw his contributions upon leaving public service, defendant shall be entitled to one-half of plaintiff's contributions made during the marriage.
See, also, Green I, supra (finding that "[t]he trial court's formula for calculating the marital portion of appellant's retirement benefits is equitable, reasonable, and not an abuse of discretion").
 {¶ 15} Through paragraph 14 of the divorce decree, the trial court further ordered: "Each party shall do all things necessary to give effect to the foregoing, including the establishment of Qualified Domestic Relations Order."
 {¶ 16} Burdette Green asserts that the trial court's DOPO impermissibly and materially changes the distribution of his STRS pension as ordered in the decree of divorce. Lennis Green contends that, through paragraph 14 of the divorce decree, the trial court reserved continuing jurisdiction over the distribution of Burdette Green's STRS pension and, furthermore, under R.C. 3105.89, the trial court had authority to issue the DOPO.
 {¶ 17} By providing for the establishment of a Qualified Domestic Relations Order ("QDRO") in paragraph 14, the trial court showed intent to reserve some continuing jurisdiction over Burdette Green's STRS pension. See, e.g., McKinney v. McKinney
(2001), 142 Ohio App.3d 604, 608 (explaining that "[a] QDRO is a current distribution of the rights in a retirement account that is payable in the future, when the payee retires. * * * QDRO is * * * merely an order in aid of execution on the property division ordered in the divorce decree. So long as the QDRO is consistent with the decree, it does not constitute a modification, which R.C. 3109.171(I) prohibits, and the court does not lack jurisdiction to issue it").
 {¶ 18} However, while paragraph 14 of the divorce decree shows intent to reserve some continuing jurisdiction over Burdette Green's STRS pension, we cannot conclude that through paragraph 14 the trial court expressly or impliedly reserved jurisdiction to modify the award of pension benefits. See, e.g., Doolin v. Doolin (1997), 123 Ohio App.3d 296, 300
(finding that no reservation of jurisdiction existed that permitted a court to adopt a QDRO that modified a division of property set forth in a divorce decree); see, also, Zimmie v.Zimmie (1984), 11 Ohio St.3d 94, 97 (stating that "[o]nce the division of property is fixed by the court, both spouses are legally entitled to the share respectively allotted to them").
 {¶ 19} Through paragraph 14, the trial court ordered: "Eachparty shall do all things necessary to give effect to theforegoing * * *." (Emphasis added.) In this case, the "foregoing" included distributing Burdette Green's STRS pension as provided in paragraph five of the decree of divorce. Thus, through paragraph 14 of the divorce decree, the trial court did not expressly or impliedly reserve jurisdiction to modify the award of pension benefits. To the contrary, through paragraph 14 of the divorce decree, the trial court ordered that the preceding paragraphs in the divorce decree, including paragraph five, should be given effect. Therefore, the plain language of paragraph 14 of the decree of divorce does not support Lennis Green's contention that the trial court reserved jurisdiction through paragraph 14 to modify the distribution of Burdette Green's STRS pension.
 {¶ 20} Lennis Green further contends, however, that the modification of the distribution of Burdette Green's STRS benefits in the court's DOPO of April 19, 2005, simply carries out the trial court's intention that an equitable portion of Burdette Green's STRS benefits should be given to her. We cannot agree.
 {¶ 21} In paragraph 13 of the decree of divorce, the trial court stated:
The foregoing distribution of marital property and indebtedness, while not necessarily precisely equal, is found by the Court to be nevertheless equitable considering all relevant factors in this case; and such distribution is made considering the case as a whole and not necessarily with independent consideration of each item.
 {¶ 22} Thus, by paragraph 13 of the decree of divorce, the trial court expressly found that the distribution of Burdette Green's STRS pensions as stated in paragraph 5 of the divorce decree was equitable. See, also, Green I, supra (finding that the trial court's apportionment of Burdette Green's retirement benefits was equitable, reasonable, and not an abuse of discretion).
 {¶ 23} The distribution of Burdette Green's STRS pension as ordered in the DOPO, however, materially differs from the distribution of Burdette Green's STRS pension as ordered in paragraph 5 of the parties' decree of divorce.
 {¶ 24} The DOPO provides, in relevant part:
c. Fraction:
i. The numerator of the fraction shall be 28.25 which is the number of years during which the Plan Participant was both a member of the Public Retirement Program and married to the Alternate Payee. The date of the marriage is September 11, 1965to December 31, 1993.
ii. The denominator, which shall be determined by the Public Retirement Program at the time that the Plan Participant elects to take a benefit or a payment, shall be the Participant's total years of service credit with the Public Retirement Program or, in the case of a Participant in a retirement plan established under Chapter 3305, Revised Code, the years of participation in the plan.
(April 19, 2005 Division of Property Order.)[1]
 {¶ 25} "While a trial court does not have continuing jurisdiction to modify a marital property division incident to a divorce or dissolution decree, it has the power to clarify and construe its original property division so as to effectuate its judgment." Gordon v. Gordon (2001), 144 Ohio App.3d 21, 24. However, absent from the DOPO is any language stating that through this DOPO the trial court was clarifying or construing its original property division as stated in the divorce decree so as to effectuate its judgment.
 {¶ 26} Furthermore, we find that paragraph five of the original divorce decree does not require clarification or construal due to ambiguity. In State v. Porterfield,106 Ohio St.3d 5, 2005-Ohio-3095, the Supreme Court of Ohio instructed:
* * * [N]o clear standard has evolved to determine the level of lucidity necessary for a writing to be unambiguous. Some courts have reasoned that when multiple readings are possible, the provision is ambiguous. * * * The problem with this approach is that it results in courts' reading ambiguities into provisions, which creates confusion and uncertainty. When confronted with allegations of ambiguity, a court is to objectively and thoroughly examine the writing to attempt to ascertain its meaning. * * * Only when a definitive meaning proves elusive should rules for construing ambiguous language be employed. Otherwise, allegations of ambiguity become self-fulfilling.
Id. at ¶ 11.
 {¶ 27} In this case, a definitive meaning of paragraph five of the divorce decree does not prove elusive. Rather, it unambiguously details the manner of distribution of Burdette Green's STRS pension under the divorce decree.
 {¶ 28} Moreover, under the facts and circumstances of this case, we are not persuaded by Lennis Green's contention that R.C.3105.89 provides authority for the trial court's modification of the distribution of Burdette Green's STRS pension. R.C. 3105.89
provides:
Notwithstanding division (I) of section 3105.171 of the Revised Code:
(A) The court shall retain jurisdiction to modify, supervise, or enforce the implementation of an order described in section3105.81 of the Revised Code.
(B) The court may modify an order issued under section 3105.171
or 3105.65 of the Revised Code that was effective prior to the effective date of this section for the purpose of enforcing the order or carrying into effect the manifest intentions of the parties. A modified order must meet the requirements of section3105.82 of the Revised Code.
See, generally, R.C. 3105.171(B) (granting jurisdiction to the trial court to allocate marital and separate property). See, also, R.C. 3105.82 (requirements of an order providing for division of property from a public retirement program to an alternate payee).
 {¶ 29} Thus, according to R.C. 3105.89(B), notwithstanding R.C. 3105.171(I), a court may modify a prior division of marital property issued under R.C. 3105.171 or 3105.65 for: (1) the purpose of enforcing that order, or (2) the purpose of carrying into effect the manifest intentions of the parties.
 {¶ 30} Here, as discussed above, paragraph five of the decree of divorce unambiguously details the manner of distribution of Burdette Green's STRS pension. Rather than enforcing the division of marital property as ordered in the divorce decree, the DOPO transforms and alters the divorce decree's distribution of Burdette Green's STRS pension. Because the DOPO materially changes the substance of the divorce decree's distribution of Burdette Green's STRS pension, the DOPO modifies the parties' division of property in the divorce decree and does not enforce
the distribution of Burdette Green's STRS pension as ordered in the divorce decree.
 {¶ 31} Furthermore, even construing the evidence in favor of Lennis Green, we find the record is devoid of sufficient evidence to support a finding that the DOPO's modification of the distribution of Burdette Green's STRS pension "carr[ies] into effect the manifest intentions of the parties" as required by R.C. 3105.89(B). See, generally, Hartford Cas. Ins. C. v.Easley (1993), 90 Ohio App.3d 525, 530 (stating that "[t]he standard for a review of the sufficiency of the evidence in a civil case is similar to the standard for determining whether to sustain a motion for judgment notwithstanding the verdict, which is whether the defendant is entitled to judgment as a matter of law when the evidence is construed most strongly in favor of the prevailing party[.] * * * In other words, is the verdict one which could reasonably be reached from the evidence?"); see, also, Howard v. Himmelrick, Franklin App. No. 03AP-1034,2004-Ohio-3309, at ¶ 4.
 {¶ 32} Here, in paragraph 13 of the divorce decree, the trial court found that the distribution of Burdette Green's STRS pension as stated in paragraph five of the decree of divorce was equitable, and this determination of an equitable distribution was later affirmed in Green I. Absent from the record is any evidence that the trial court now finds that its distribution of Burdette Green's STRS pension in paragraph five of the divorce decree fails to "[carry] into effect the manifest intentions of the parties." Indeed, because Burdette Green challenges the DOPO's distribution of his STRS pension benefits, it reasonably can be inferred that the DOPO's distribution of Burdette Green's STRS pension does not carry into effect the manifest intentions of both parties.
 {¶ 33} Accordingly, absent any evidence that paragraph 5 of the divorce decree, which previously has been determined to be equitable by the trial court and this court, now fails to carry into effect the manifest intentions of the parties and, because the DOPO modifies, rather than enforces, the earlier divorce decree, we therefore find that R.C. 3105.89(B) cannot serve as basis for the trial court's alteration of the distribution of Burdette Green's STRS pension.
 {¶ 34} In summary, in Green I, this court previously concluded that "[t]he trial court's formula for calculating the marital portion of appellant's retirement benefits is equitable, reasonable, and not an abuse of discretion." Green I, supra. Acknowledging the finding of Green I that the trial court's formula for calculating the marital portion of appellant's retirement benefits is equitable, in this case we conclude that the trial court failed to expressly or impliedly reserve jurisdiction to modify the award of pension benefits in the decree of divorce. We further find no evidence supporting a finding that the DOPO's modification of the trial court's previous calculation of the marital portion of plaintiff's retirement benefits was made for the purpose of enforcing the divorce decree or carrying into effect the manifest intentions of the parties as required by R.C. 3105.89(B).
 {¶ 35} Because there is no evidence supporting a finding that the DOPO's modification of the trial court's previous calculation of the marital portion of plaintiff's retirement benefits was made for the purpose of enforcing the divorce decree or carrying into effect the manifest intentions of the parties as required by R.C. 3105.89(B), and because the trial court failed to expressly or impliedly reserve jurisdiction to modify the award of pension benefits as stated in the decree of divorce, we therefore hold that the trial court's DOPO violates R.C. 3105.171(I) and impermissibly modifies the division of property as ordered in the decree of divorce. See Robins, supra, at ¶ 12 (stating that if a court fails to reserve jurisdiction over the distribution of a vested but unmatured pension, then "[i]n such instance, the court is without subject matter jurisdiction to modify the award of pension benefits and thus has no power to act in this regard").
 {¶ 36} Therefore, having held that the trial court's order of April 19, 2005, impermissibly modifies the division of property as ordered in the decree of divorce, we sustain plaintiff's sole assignment of error.
 {¶ 37} Accordingly, having sustained plaintiff's sole assignment of error, we vacate the Division of Property Order of April 19, 2005, of the Franklin County Court of Common Pleas, Division of Domestic Relations.
Judgment vacated.
Brown and Sadler, JJ., concur.
[1] Cf. R.C. 3105.82, effective January 1, 2002 (requirements of an order providing for division of property from a public retirement program to an alternate payee). R.C. 3105.82 provides, in relevant part:
An order described in section 3105.81 of the Revised Code shall meet all of the following requirements:
* * *
(D) Specify the amount to be paid to the alternate payee as one of the following:
* * *
(2) As a percentage of a fraction determined as follows of a monthly benefit or lump sum payment:
(a) The numerator of the fraction shall be the number of years during which the participant was both a member of a public retirement program and married to the alternate payee.
(b) The denominator, which shall be determined by the public retirement program at the time the participant elects to take the benefit or payment, shall be the participant's total years of service credit or, in the case of a participant in a retirement plan established under Chapter 3305. of the Revised Code, years of participation in the plan.