STONECO, INC., APPELLANT, *v.* LIMBACH, TAX COMMR., APPELLEE.

[Cite as Stoneco, Inc. *v.* Limbach (1990), 53 Ohio St. 3d 170.]

(No. 89-1841—Submitted May 29, 1990—Decided August 29, 1990.)

*Arter & Hadden, R. Douglas Wrightsel* and *Brendan W. Kelley,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, and *James C. Sauer,* for appellee.

*Per Curiam.* For the tax year at issue, R.C. 5733.061 granted the following franchise tax credit for investing in property used in manufacturing:

"A credit shall be allowed against the tax imposed by Chapter 5733. of the Revised Code for each taxable year. The credit shall equal the lesser of the amount of tax otherwise due under such chapter or the difference between:

"(A) The tangible personal property taxes timely paid in the taxable year that were charged against engines, machinery, tools, and implements owned by the taxpayer, listed for taxation in this state under section 5711.16 of the Revised Code as used or designed to be used in refining or manufacturing, and acquired on or after January 1, 1978; minus

"(B) The taxes that would have been charged against such property and paid during such year had it been listed and assessed for taxation at twenty per cent of its true value." Am. Sub. H.B. No. 828 (137 Ohio Laws, Part II, 3500, 3502-3503).

R.C. 5711.16 states:

"A person who purchases, receives, or holds personal property for the purpose of adding to its value by manufacturing, refining, rectifying, or combining different materials with a view of making a gain or profit by so doing is a manufacturer. * * *"

Stoneco argues that it manufactures marketable commodities (aggregate, sand, and agricultural limestone) from unmarketable material (limestone) and, consequently, that its equipment qualifies for credit. The commissioner, conversely, contends that *Schumacher Stone Co.* is indistinguishable and that the crushing and screening of limestone is not manufacturing. The issue before us is closely balanced and difficult to resolve. Nevertheless, we think Stoneco advances the better argument.

We agree with the commissioner that *Schumacher Stone Co.* is factually indistinguishable from the instant case. Schumacher blasted stone from its quarry and carted the stone to a primary crusher, where it crushed the stone to smaller stone. It then crushed the stone in successive crushers, separated the larger pieces with vibrating screens, and continued this process until it produced a variety of marketable grades of aggregate. Schumacher also produced agricultural limestone.

The court there held that Schumacher started with stone and sold stone. It reasoned that Schumacher did not apply skill or labor to make the particles of stone conform to any particular shape or design. After reviewing cases from other jurisdictions, the court concluded that the BTA's predecessor, the Tax Commission, had ample reason and authority to find that Schumacher's operations were not manufacturing.

However, we have travelled away from this narrow view in defining "manufacturing" for the personal property tax. In *Red Top Brewing Co.* v. *Bowers* (1955), 163 Ohio St. 18, 25, 56 O.O. 8, 11, 125 N.E. 2d 188, 192, we admitted our inability to reconcile the conclusion of *Cleveland-Cliffs Iron Co.* v. *Glander* (1945), 145 Ohio St. 423, 31 O.O. 39, 62 N.E. 2d 94, an ore mining and processing case which relied on and explained *Schumacher Stone Co.,* with the reasoning of *Middletown Iron & Steel Co.* v. *Evatt* (1941), 139 Ohio St. 113, 22 O.O. 101, 38 N.E. 2d 585, (preparing scrap metal for consumption in steel manufacturing was manufacturing) or the decision in *Eastern Machinery Co.* v. *Peck* (1953), 160 Ohio St. 144, 51 O.O. 57, 114 N.E. 2d 55 (purchasing and reconditioning used machine tools and then reselling them was manufacturing). We said that failure to recognize that the personal property tax statutes tend to broaden the traditional definition of manufacturer or manufacturing, as we had noted in *Eastern Machinery Co.,* had led to inconsistent decisions.

In *Eastern Machinery Co.,* after explaining that statutes relating to the personal property tax broadened the

definition of manufacturing, we stated that the statutes do not require that the articles be used or consumed "directly" in the production of property, as in the sales tax. Instead, "* * * articles which are manufactured or changed in any way either by combining them or adding thereto are entitled to enjoy the status of * * * [manufactured personal property]." *Id.* at 150, 51 O.O. at 60, 114 N.E. 2d at 58. We also quoted from *Miller* v. *Peck* (1952), 158 Ohio St. 17, 20, 47 O.O. 485, 486, 106 N.E. 2d 776, 778, in which we held that operating a commercial hatchery was manufacturing:

"The term, 'manufacturing,' is otherwise defined as the production of articles for use from raw or prepared materials by giving to these materials new forms, qualities, properties, or combinations, whether by hand labor or by machinery. * * *

"Usually, where, through the use of tools and machinery, commodities or items of personal property are by special treatment or processing transformed into other more valuable items of personal property as a commercial business, the operation is that of manufacturing. * * *"

In *Continental Coffee Co.* v. *Bowers* (1963), 174 Ohio St. 435, 437, 23 O.O. 2d 81, 82, 189 N.E. 2d 901, 903, we described a manufacturer as one who "* * * takes raw material unfit for human use or consumption and by the use of various processes converts it into a finished product which is fit for such use or consumption."

In light of these cases, we hold that, for the tangible personal property tax and, consequently, for the R.C. 5733.061 investment credit, manufacturing is the commercial use of engines, machinery, tools, and implements to convert material into a new form, quality, property, or combination and into a more valuable commodity for sale. *Schumacher Stone Co.* failed to recognize the new form given to the limestone by the crushing equipment and the more valuable commodity consequently created. Accordingly, we overrule *Schumacher Stone Co.* and hold that Stoneco's equipment is used or designed to be used in manufacturing and that it qualifies for the R.C. 5733.061 investment credit.

In the instant case, Stoneco takes raw material, limestone, and converts it into a new form with new qualities and into a more valuable commodity, limestone aggregate. It converts a raw material that cannot be used for construction and transforms it into a product that can. Thus, Stoneco uses the crushing, sorting, and mixing equipment in manufacturing.

As to the quarrying equipment, such equipment is normally considered to be mining equipment and not manufacturing equipment. As explained below, we choose to apply an integrated plant test here in examining whether the quarrying equipment qualifies for the investment credit.

The statutes under review do not contain the term "directly," as does the sales tax. This term has prevented us from applying the integrated plant test to the sales tax, to which we have instead applied the physical change test. *Youngstown Bldg. Material & Fuel Co.* v. *Bowers* (1958), 167 Ohio St. 363, 367, 5 O.O. 2d 3, 5, 149 N.E. 2d 1, 3-4; *DeNoon* v. *Limbach* (1989), 42 Ohio St. 3d 35, 536 N.E. 2d 1161. However, we see no corresponding statutory constraint against applying an integrated plant test to personal property tax cases and to the disputed investment credit. The integrated plant test comports with the broader concept of manufacturing that we have recognized in personal property tax cases such as *Eastern Machinery Co.* v. *Peck*, *supra*.

The *Youngstown Bldg. Material & Fuel Co.* court stated this to be the test: an item is part of an "integrated plant" if it is indispensable to the manufacture of the product. *Niagara Mohawk Power Corp.* v. *Wanamaker* (1955), 286 App. Div. 446, 449, 144 N.Y. Supp. 2d 458, 461, a seminal case applying this test, looked to whether the equipment was essential to production and whether it was synchronized and integrated into the manufacturing. According to *Manitowoc Co.* v. *Sturgeon Bay* (1984), 122 Wis. 2d 406, 417, 362 N.W. 2d 432, 438, "* * * [u]nder the integrated plant test, machinery that is integrated into a synchronized system of manufacturing is used directly in manufacturing whether or not it actually causes a physical change in raw materials. * * *"

Thus, engines, machinery, tools, and implements that are synchronized into the manufacturing operation so that they are indispensable to the manufacture of the marketable commodity are used in manufacturing for the personal property tax and qualify for the R.C. 5733.061 investment credit.

Consequently, in the instant case, equipment with which Stoneco quarries the limestone qualifies for this credit. Stoneco could not produce aggregate without limestone, and the quarrying operation provides it. This operation is synchronized to the manufacture of aggregate, is indispensable to Stoneco's manufacturing, and, therefore, is a part of Stoneco's integrated plant. See, also, *Rowe Contracting Co.* v. *State Tax Comm.* (1972), 361 Mass. 158, 279 N.E. 2d 675, and *Indiana Dept. of Revenue* v. *Cave Stone, Inc.* (Ind. 1983), 457 N.E. 2d 520.

Accordingly, we reverse the BTA's decision since it is unlawful.

*Decision reversed.*

SWEENEY, HOLMES, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.

MOYER, C.J., dissents.

MOYER, C.J., dissenting. I respectfully dissent from the *per curiam* opinion. I do so, not because I do not agree with the substantive law announced by the majority, but because it requires us to overrule *Schumacher Stone Co.* v. *Tax Comm.* (1938), 134 Ohio St. 529, 13 O.O. 161, 18 N.E. 2d 405. I believe it is appropriate to overrule a previous decision of this court where the decision is not well-reasoned or where circumstances have changed to such an extent that the previous holding is no longer reasonable. No one argues that the opinion in *Schumacher Stone Co., supra,* was not a well-reasoned opinion. Rather, the majority opinion expands the definition of "manufacturing," as the term is used in R.C. 5733.061, and also adopts an integrated plant theory to include what previously has been deemed to be mining equipment. Those are actions that are more appropriately taken by the General Assembly than by this court.

Appendix
6.13

PENGAD-Bayonne, N.J.

TYPICAL STONE PROCESSING OPERATION

| | | DRAWN BY | DTI |
|---|---|---|---|
| SCALE: NONE | APPROVED BY: | REVISED | |
| DATE: 1-9-88 | | | |
| | | DRAWING NUMBER | |